**MIAMI VALLEY FRUIT CO. et al. v. UNITED STATES. \***

No. 6003.

Circuit Court of Appeals, Fifth Circuit.

Nov. 20, 1930.

Rehearing denied January 24, 1931.

Jno. R. L. Smith, of Macon, Ga., W. H. Harris, of Ft. Valley, Ga., and Smith & Smith and Geo. A. Pindar, all of Macon, Ga., for appellants.

William A. Bootle, U. S. Atty., of Macon, Ga., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, Elmer T. Kemper, and F. F. Toomey, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for the United States.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

SIBLEY, District Judge.

The United States sued the Miami Valley Fruit Company and its sureties upon a bond payable to the United States for the penal sum of $22,500, dated August 27, 1926, containing the following conditions:

"Whereas there is due from the above bounden principal taxes and penalties, and interest in the amount of Nineteen Thousand Two Hundred Twenty-Four & 97/100 dollars, and

"Whereas, to exact payment of the amount at this time will result in undue hardship to the above bounden principal; and

"Whereas it appears that the amount of this bond is sufficient to cover the amount of the tax, penalty and interest, plus any additional penalty and interest;

"Now, therefore, the condition of the foregoing obligation is such that if the principal on or before the 1st day of September, 1927, pay such amount, in accordance with the terms of the extension granted, and shall otherwise well and truly perform and observe all provisions of law and the regulations, then this obligation is to be void, but otherwise to remain in full force and virtue."

Demurrers to the petition and answer were ruled adversely to the defendants, as were certain objections to evidence. Both sides moving for a directed verdict, the court directed it for the plaintiff, and judgment was entered for $19,258.97 principal, $1,849.98 interest to July 16, 1930, and future interest at 7 per cent. and costs. The defendants appealed therefrom.

The general demurrer to the petition was properly overruled. The suit was not one to collect a tax and penalties, but was directly on the bond. The petition averred the execution of the bond, the breach of its condition, and the amount claimed as damages. The allegations as to the assessment of the tax prior to the giving of the bond were by way of inducement. It was unnecessary that the petition set forth the prerequisites of a valid assessment as if the suit had been one to collect the tax. A good cause of action on the bond was set forth. The special demurrers to paragraphs 7 and 8 of the petition, to the effect that the damages were therein improperly computed, were well taken, but affected only the amount of the recovery, to which we will advert in considering the direction of the verdict. The defensive pleadings admitted the execution of the bond and the failure to make the payment promised in it, but contended not only that a wrong measure of damages was claimed, but that there was no liability on the bond at all because (1) it was void for duress, because extorted under threat to seize the principal's property; (2) was without consideration, because in fact no tax was due by the principal except what has since been paid; and (3) there was no breach of it because it was conditioned for the payment only of validly assessed taxes and none had been validly assessed, in that no notice of a claimed deficiency was given before the assessment was made, and in that the tax liability was barred before assessment. These are the questions raised by the rulings on defendant's pleadings, again on the evidence, and on direction of the verdict.

The facts apparent from the pleadings and proof are: Miami Valley Fruit Company filed its income tax returns for the years 1918 and 1919 and paid the tax appearing to be due. February 1, 1924, and again November 28, 1924, consents in the name of the taxpayer to extend the time for

assessing taxes under such returns for one year beyond the statutory period were filed, which the taxpayer denies having executed. On February 19, 1926, without previously sending by registered mail a notice of a claimed deficiency, the Commissioner assessed an additional tax for 1918 of $16,087.62, and on February 23, 1926, mailed notice that he had done so, which notice the tax payer received. An additional tax of $3,137.35 was also assessed for 1919. The collector threatened to enforce the assessment by distraint, when on August 27, 1926, the bond sued on was given; the amount of $19,224.97 mentioned therein as due for taxes being the sum of the two assessments. The assessment for 1919 was later paid, but that for 1918, although demanded, was not paid on September 1, 1927, the date fixed in the bond for payment. The bond does not recite that the Secretary of the Treasury agreed to its taking, nor was such consent proven.

We turn next to the statutes involved. The original amount of the disputed tax is, of course, fixed by the Revenue Act of 1918 (40 Stat. 1057), under which it accrued. The machinery for its collection could be, and was, changed. The assessment of February 19, 1926, was made under the provisions of the Revenue Act of 1924 (43 Stat. 253); the Revenue Act of 1926 (44 Stat. 9) not taking effect until February 26, 1926. Under the limitations fixed by the Revenue Act of 1924, § 277 (26 USCA § 1057 note), the assessment for 1918 was barred unless aided by the consents whose validity was challenged, but not tried. Otherwise the assessment appears to be valid. It is true that under section 274 (a), 26 USCA § 1048 note, when a deficiency is discovered, a notice must generally be sent by registered mail sixty days before an assessment can be made, but by section 274(d), 26 USCA § 1051 note, an assessment may be made without notice when jeopardized by the lapse of time, provided notice be given afterwards, as was done here. Under section 274(a) an appeal, if any, is to be taken to the Board of Tax Appeals before assessment. The assessment under section 274(d) may be contested by a claim for abatement filed within ten days after notice and demand, which, when denied, may be appealed to the Board of Tax Appeals. By section 279(a), 26 USCA § 1063 note, the claim for abatement is to be accompanied by a bond "conditioned upon the payment of so much * * * of the claim as is not abated." The taxpayer here did not, on receipt of the notice and demand, contest it by giving a bond so conditioned, but gave the bond sued upon, in which it was agreed that the amount assessed was due and would be paid September 1, 1927. Although no special statute is referred to in the bond, there is a general reference to the laws and regulations, and it was evidently given and accepted under the provisions of section 274(g) of the Revenue Act of 1924 (26 USCA § 1054). True the Revenue Act of 1926 was in effect when the bond was taken, but its corresponding provision, in section 274(k), 26 USCA § 1054, makes no material change, and section 274 of the former act (26 USCA § 1048 note et seq.) was expressly excepted from repeal. Section 1200(a), 26 USCA § 1a note. These sections permit an extension for not exceeding eighteen months of the time of payment of an assessed deficiency, when approved by the Secretary of the Treasury, if present payment "will result in undue hardship to the taxpayer," on his giving bond, if required by the Commissioner, "conditioned upon the payment of the deficiency in accordance with the terms of the extension." Interest at 6 per cent. is to be collected on the tax so extended. If payment is not made at the extended due date, interest at 1 per cent. per month from such due date until paid shall be collected. The very words quoted from this statute are written into the bond. The bond was intended to accomplish the purpose of the statute, and is affected and supplemented by its provisions. As a statutory bond given to arrest legal proceedings, it is not void for duress of goods, though produced by a threat to distrain, any more than other bonds given to arrest or suspend similar legal proceedings. The plea to this effect was bad.[1] The case of United States v. Tingey, 5 Pet. 115, 8 L. Ed. 66, is broadly distinguishable. There the officer had no lawful right to require of his subordinate the bond which was demanded as a condition of the latter's holding the job, and to do so was bald usurpation. Here the collector was under lawful duty to distrain and authorized to take exactly this bond in extending the time of payment. Nor is the bond void for want of approval by the Secretary of the Treasury. He is not required to indorse an approval upon the bond. There are cases named in the statute when no approval is necessary. The general presumption of regularity in official action would sustain this bond until rebutted. If approval was shown to have been held necessary and in fact lacking, the United States might have repudi-

[1] See Burnet v. Chicago Ry. Equipment Co., 282 U. S. 295, 51 S. Ct. 137, 75 L. Ed. ——.

ated the extension and avoided the bond, but it would not lie in the mouth of the taxpayer to question his bond for this cause after full enjoyment of the extension and after ratification by the United States in bringing suit upon the bond. The plea of total want of consideration for the bond is also bad. Irrespective of the rules of law concerning sealed instruments (no seal appears on this bond in the record, though its body recites one), the real consideration for giving it and for the sureties signing it was the extension of time for a year and the removal of the threat of distraint. This consideration, both a benefit to the taxpayer and a detriment to the United States, was ample and was fully enjoyed.

■ The bond, therefore, being valid, what is the obligation assumed in it? It is not a bond to pay such amount as may really be due as tax, reserving the right to contest that question. This taxpayer did not pursue the remedy of contest, but, agreeing that a certain amount was due, sought an extension of the time of payment by giving bond, as permitted by the statute. The statute says the bond is to be conditioned "to pay the deficiency at the time fixed by the extension." The bond expresses it "to pay on or before September 1st, 1927 such amount in accordance with the terms of the extension granted." The meaning is that an extension until September 1, 1927 had been granted. "Such amount" refers to the preceding recitals, "Whereas there is due from the above bounden principal taxes and penalties, and interest in the amount of Nineteen Thousand Two Hundred Twenty-Four & 97/100 dollars, and Whereas it appears that the amount of this bond is sufficient to cover the amount of the tax, penalty and interest, plus any additional penalty and interest." The true meaning of the whole is that there shall be paid by September 1, 1927, $19,224.97, plus any additional interest or penalties that may accrue, not exceeding in the aggregate $22,500, the penalty of the bond. The purpose of the statute and of the bond was not to fix a later date to begin a litigation about the amount really due, but, the amount being conceded, to fix a future date for its absolute payment. The bond was accepted on the faith of this recital of the amount to be paid, and its makers were estopped to question it unless upon an issue of fraud, accident, or mistake. 21 C. J. 1097, 1099. The validity of the assessment or the correct amount of the tax were not proper issues in defense of a suit upon such a bond.

■ But it is said that, if the tax were barred when assessed, and had been paid instead of giving bond, it could be recovered as an overpayment, and, to avoid circuity of action, such right to recover the overpayment should be a good answer to the bond. Assuming that under proper pleadings such a result might be reached against an ordinary litigant, it cannot, when the United States is the plaintiff. No claim against the United States can, as a rule, be used in court until it has been passed upon by the Treasury Department. Title 28, U. S. Code, § 774 (28 USCA § 774). And especially in a tax matter is it the requirement of law that the liability be passed upon by the taxing officers before it is asserted in court. Title 26, U. S. Code, § 156 (26 USCA § 156). The present question of limitation, being peculiarly a law question, is very appropriate for a court trial, but in other cases the question of overpayment might depend on other considerations. The section last cited makes no exceptions. Any question of the amount of tax due must go to the taxing officers first. Whether, after responding to this bond, the taxpayer may, after the required preliminaries, recover his money on establishing that the assessment was in fact barred, is not a question for present decision.

■ The amount for which the verdict was directed embraces the tax for 1918, $16,087.-62, a 5 per cent. penalty, $804.38, and $2,-366.97 interest to August 16, 1928, amounting to $19,258.97, with interest to be added at 6 per cent. on $16,087.62 from August 16, 1928. These totals are apparently based on provisions of the act of 1918; but the provisions of this bond and the statute under which it was given must control. Under the agreement in the bond, $16,087.62 was the total amount due for 1918 at the date of the bond, August 27, 1926, and by that agreement both parties are, for the purposes of this suit, bound. By the statute, 6 per cent. interest to the maturity of the bond, September 1, 1927, is demandable, and 1 per cent. per month thereafter until paid. The aggregate so due on July 16, 1930, the date of judgment, exceeds the amount for which judgment was actually rendered. Error in the judgment on this account is therefore not a matter of which the appellants can complain.

The judgment is therefore affirmed.