STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         DOCKET NO. RE-18-0013

JOANNE M. STINSON and BETH A.      )
CORMIER,                           )
                                   )
                Plaintiffs,        )
                                   )          ORDER ON PLAINTIFFS,
         v.                        )      INTERVENORS, AND DEFENDANTS'
                                   )      MOTIONS FOR SUMMARY JUDGMENT
GREGORY S. CUSHMAN and             )
JENNIFER S. CUSHMAN,               )

                Defendants,

and

NANCY COBB and JERRY COBB,

                Intervenors.


        Before this court are the parties' cross Motions for Summary Judgment. For the following

reasons, the Motions are denied.

**I. Factual Background**

        The parties all own property within the Crescent Lake Development Association's

subdivision plan (the "Plan"). All deeds relevant to this action have referenced and adopted the

Plan into the language of the deed. Plaintiffs own lots 135, 136, 137 and 138 as depicted on the

Plan. Intervenors own lots 34 and 35 as depicted on the Plan, as well as 128 and 129. Defendant's

own lots 124, 125, 126, and 127 as depicted on the Plan.

        The Plan depicts over 150 numbered parcels of land. Beginning in 1931, the Crescent Lake

Association began selling parcels by deed, which referenced a specific numbered lot in the Plan.

Most deeds stated:

> "Said lot is conveyed together with a right of way in common with
> others to and from the premises to the town road between Webbs
> Mills and East Raymond by such common ways as are or may be
> established by this Corporation."

This action concerns a strip of land described in the Plan as 33A. Parcel 33A is but one of several "A" designated parcels, all of which are depicted in the Plan as narrow strips that run from various points along Haskell Ave to Crescent Lake. Unlike other lots depicted on the Plan, which are fully demarcated by enclosed boundaries, 33A and other "A" parcels are not demarcated by fully enclosed boundaries. Instead, the Plan's illustration depicts the "A" lots to be closed on three sides, but do not depict any enclosure in regards to Haskell Ave, similar to how Haskell Avenue flows from one street to another.

Parcel 33A is only twenty feet wide and runs between lots 33 and 34. 33A provides a walking path from Haskell Avenue to the Crescent Lake shorefront. Plaintiffs hold title to Lot 135 by deed and an express easement over 33A. The following language regarding 33A can be traced back in Lot 135's chain of title to the Association's original grant of the deed:

> "Said lot is conveyed together with a right of way in common with others to and from said premises to the town road between Webbs Mills and East Raymond by such common ways as are or may be established by the Corporation and *a right of way in common with others over . . . lot 33-A as shown on said map.*"

(Jt. Ex. 7; Jamison Aff. Ex 14; PSMF ¶ 14; Defs.' R. PSMF ¶ 14)(*emphasis added.*) Lots 128 and 129, were conveyed to the Intervenors' family in the early 1930s, whose deed also states:

> "Said lots are conveyed together with . . . a right of way in common with others to and from said premises over Haskell Ave. . . . and over lots 23A, and 33A, as shown on said map."

(Int. and Pls.' JSMF ¶ 5.) This language can also be traced back in the chain of title to the Association's original grant of the deed. (Jamison Aff. Ex 11.) Although the parties dispute the legal classification of 33A, the Defendants do not hold title to any deed that specifically references 33A, or hold any express easement over the parcel.

The history of the Association, which developed and sold lots in the subdivision, is also at issue in this case. The Association was formed on August 11, 1928, with its owners being Harry P. Woodbury (48 shares of stock), Josiah D. Winship (2 shares of stock), and Byron E. Haskell (48 shares of stock). On October 14, 1940, the Association conveyed property to Byron Haskell by deed, which included:

> "certain lots or parcels of land situated in the Town of Raymond, in said County and State, and being lots numbered 65, 66, 67, 68, 69, 70, 71, 72, 74, 75, 76, 77, 78, 79, 80, 81, 86, 87, 89, 4, 92, 91, 94, 94a, 95, 95a, 96, 97, 98, 99, 100, 101, 103, 104, 105, 106, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 122, 123, 124, 125, 126, 127, 130, 133, 136, 137, 93, 138, 141, 142, 143, 144, 145, 146, 147, 148. Meaning and intending to convey and hereby conveying all of the unsold lots belonging to the said Crescent Lake Development Association, as shown on plan of Crescent Lake Terrace . . ."

(JSMF ¶ 15, Ex 12.) The Association ceased doing business on June 9, 1941.

Byron Haskell subsequently deeded to Bertha G. Haskell "all unsold lots belonging to [Byron] which [he] obtained by deed from Crescent Lake Development Association" on October 14. (Ints.'and Pls.' JSMF ¶ 17). Neither the deed to Byron or Bertha Haskell contained a specific reference to 33A. Bertha Haskell also was the sole devisee under Byron Haskell's will after Byron died in December, 1943.

The Association ceased doing business on June 9, 1941. Then, Bertha Haskell died in March, 1965. Roy N. Cummings was the sole devisee under Bertha Haskell's will. Roy N. Cummings died on November 2, 2014. Adrian H. Schreiber was the sole devisee under Roy Cumming's will. During the pendency of this litigation, Adrian Schreiber issued a release deed to the Defendants, which purported to convey any interest he held in 33A.

The Plaintiffs and Intervenors believe that only those who have an express easement over 33A are allowed to use it. In or around 2014, the Defendants' represented that they had a right to

use 33A to access the lake, for which Plaintiffs and Interveners incorrectly assumed to mean the Defendants had an express easement over 33A. The Defendants proceeded to install a seasonal dock at the end of 33A. The parties disagree about the nature and extent to which the Defendants have since utilized the dock, which will be treated as a disputed issue of fact. There is no evidence regarding whether other individuals with a deeded right of way over 33A or other "A" lots have maintained a private dock. There is also no evidence regarding if, how, or when, any person without a deeded right of way may or may have not utilized 33A, other than for a walking trail.

The Plaintiffs filed this lawsuit seeking a declaratory judgment that: (1) the Defendants have no right to use 33A, by virtue of deed or otherwise; (2) the Defendants have no right to erect a dock at the end of 33A, regardless of any interest they might have in the property; (3) Defendants do not hold a fee interest in 33A by virtue of the release deed issued by Adrian Schreiber; (4) if the Defendants hold a fee interest in 33A, their use of the dock still impairs Plaintiffs and Intervenors' deeded right of way over 33A; and (5) the Defendants cannot hold fee title to 33A by virtue of the Paper Streets Act. The Intervenors have joined in the Plaintiffs' request for declaratory judgment.

The Defendants have filed a counterclaim seeking declaratory judgment that: (1) the Defendants have an easement over 33A by virtue of the Plan and thus have a right to maintain a private dock; (2) Defendants own 33A by virtue of the release deed Adrian Schreiber and his alleged inheritance of the land; (3) the Defendants own an interest in 33A by virtue of Adrian Schreiber and his alleged inheritance of a shared interest in 33A; and (4) the Defendants own an interest in 33A by virtue of Adrian Schreiber and his alleged inheritance of the shares in the Association held by Byron Haskell.

**II. Summary Judgment Standard**

When there are cross-motions for summary judgment, the rules for consideration of summary judgment are applied separately to each motion. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. The record on each summary judgment issue must be considered most favorably to the party objecting to the grant of summary judgment on that issue. *Blue Star Corp. v. CKF Properties LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quotations omitted).

Once a properly supported motion is filed, the party opposing summary judgment must show that a factual dispute exists sufficient to establish a prima facie case for each element of the defense raised in order to avoid summary judgment. *Watt v. Unifirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897. A party who moves for summary judgment is entitled to judgment only if the party opposed to the motion, in response, fails to establish a prima facie case for each element of the defense raised. *Lougee Conservancy v. Citi Mortgage, Inc.*, 2012 ME 103, ¶ 12, 48 A.3d 774.

Unlike a stipulated record for trial, a judge is required to make certain inferences in favor of the non-moving party on issues presented at summary judgment. *See generally Blue Sky West LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 16, n.10, 215 A.3d 812. Accordingly, "[a] record of stipulated facts does not, by itself, mean that there are no genuine issues of material fact." *Blue Sky West LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 16, n.10, 215 A.3d 812.

## III. Discussion

### A. Easement Rights Generally

First, all parties seek a declaratory judgment that they hold an easement over 33A. The Plaintiffs and Intervenors seek a judgment that they hold an express easement over 33A and that the Defendants hold no easement rights. Conversely, the Defendants seek a judgment that they hold an easement over 33A in common with all subdivision residents.

Determining what easements rights the parties have in 33A is a matter of intent. It is settled law that the intent of the parties controls the interpretation of deeds. *See e.g. Beckerman v. Conant*, 2017 ME 142, ¶ 14, 166 A.3d 1006; *Stickney v. City of Saco*, 2001 ME 69, ¶¶ 32-35, 770 A.2d 592; *Milligan v. Milligan*, 624 A.2d 474, 478 (Me. 1993). "[I]n construing a deed, we first give words their general and ordinary meaning to determine if they create any ambiguity." *Sleeper v. Loring*, 2013 ME 112, ¶ 12, 83 A.3d 769. "When the language of a deed is susceptible of more than one meaning, the trial court must determine the grantors' intent from contemporaneous circumstances and from standard rules of construction." *Harvey v. Furrow*, 2014 ME 149, ¶ 9, 107 A.3d 604 (citations and quotations omitted); *see also Beckerman*, 2017 ME 142, ¶ 14, 166 A.3d 1006. However, "[t]he rules of construction should be applied *beginning with the overarching goal of giving effect to the intent of the parties*." *Lloyd v. Benson*, 2006 ME 129, ¶ 13, 910 A.2d 1048 (emphasis added). Also, if a deed references a plan, the entirety of the plan becomes a part of the deed. *Sleeper*, 2013 ME 112, ¶ 13, 83 A.3d 769.

Here, there are multiple genuine issues of fact regarding the intent of the Association and its original grant of easement rights over 33A. For one, there is an ambiguity as to whether 33A was intended to be an easement for only express easement holders, or one held in common with all subdivision residents. The Plan, which is referenced and included in the deeds at issue, depicts

33A in a manner that a fact finder could reasonably interpret to mean that 33A and other "A" lots were intended to provide owners with access to the lake. The "A" lots are all depicted on the Plan as spilling onto Haskell Avenue, and is not closed on all sides as are the other lots. Furthermore, 33A is depicted alongside multiple other "A" designated parcels, which could all reasonably be interpreted to mean that the "A" parcels were intended to provide common paths the lake for all subdivision residents.

The deeds and Plan, when read as a whole, also provide another reasonable interpretation regarding the Association's intent. Only a select few property owners have a deeded right of way over 33A and multiple other lot owners have a separate and individual right of ways over separate "A" parcels. This fact also gives rise to a reasonable interpretation that only those with an express right of way over an "A" parcel have the right to cross an "A" designated property. Also, the use of the term "lot" in Plaintiff and Intervenor's deeds also suggest that the Association intended for 33A and other "A" parcels to be separate from other streets such as Haskell Avenue.

Based on the ambiguities above, a fact finder is forced to choose between competing versions of the truth; whether 33A was intended to be an easement for subdivision owners generally, or only for those who hold an express easement over the parcel. On one hand, the express easement held by the Plaintiffs and Intervenors suggest that their respective deeds manifest an intent to convey an exclusive easement over 33A. However, the Defendants' deeds, by reference to the Plan, cast doubt on this version of truth because the Plan depicts 33A in a manner similar to other commonly held easements, such as the one over Haskell Avenue. There is no interpretation of the facts presented that are sufficient to dispel all reasonable inferences that may be made in favor of the opposing party. There is simply a competing interpretation of fact regarding the Association's intent for 33A. Accordingly, no party has established that it is entitled

to judgment as a matter of law regarding what easement rights the Defendants may or may not have over 33A. Therefore, each parties motion for summary judgment is denied with regard to whether the Defendants have an easement over 33A.

## B. Scope of Defendants' Alleged Easement

As an initial matter, Justice Horton has previously ruled that there is a genuine issue of material fact on the Defendants' Motion regarding whether the Defendants' use overburdens the parcel. Accordingly, the only issue here is whether the Plaintiffs and Intervenors have proven that they are entitled to judgment that the private dock overburdens whatever easement rights the Defendants have as a matter of law. "The scope of a party's easement rights must be determined from the unambiguous language on the face of the deed." *Matteson v. Batchelder*, 2011 ME 134, ¶ 16, 32 A.3d 1059 (quotation and citation omitted). Furthermore, an overburdening analysis is based upon reasonableness. *See Poire v. Manchester*, 506 A.2d 1160, 1163 (Me. 1986).

The court did not grant summary judgment on whether the Defendants have an easement, fee interest, or any interest in 33A. This determination will necessarily impact how the Defendants may utilize the property, regardless of any potential interest they may have. The Intervenor's make a strong argument that the use of a private dock overburdens the easement in any form, particularly if the easement is shared by all the parties. The court cannot, however, rule that the dock overburdens other easement rights as a matter of law. Furthermore, the Defendants have obtained fee ownership of 33A, and that fee ownership is subject to only a select few easements as the Plaintiffs and Intervenor's originally argue, then that will effect whether the Defendants use of the dock interferes with the rights of express easement holders. A fact finder is still presented with competing interpretations of the facts presented and it is therefore inappropriate to enter summary judgment here. *See generally Blue Sky West LLC*, 2019 ME 137, ¶ 16, n.10, 215 A.3d 812.

### C. Fee Ownership by Defendants

The Defendants also seek a declaratory judgment that they have acquired fee ownership of 33A by virtue of the release deed issued by Adrian Schreiber. Conversely, both Plaintiffs and Intervenors seek a declaratory judgment that the Defendants lack such a fee interest. Each argument relevant to this theory of ownership is addressed below.

### 1. Title By Deed

The Plaintiffs and Intervenors first argue that Adrian Schreiber did not hold fee title to 33A because the Association never conveyed the parcel to Byron Haskell. The argument here is that the Association's 1940 deed to Byron Haskell did not specifically name 33A as among the specific lots being conveyed. Accordingly, the Association did not intend to include 33A in its 1940 conveyance to Byron Haskell and thus fee title to 33A never became part of Byron Haskell's inheritable estate.

The Plaintiffs and Intervenors argue here that, "[o]f all rules of construction[,] none is more rigid than the one that where the language describing the grant is specific and definite, . . . [and] the grant cannot be enlarged or diminished by a later general description, or by mere reference to deeds through which title was obtained." *Perry v. Buswell*, 113 Me. 399, 94, A. 483. However, it is also a basic rule of deed interpretation that the "grantor's intent is relevant even when applying the standard rules of construction[.]" *Milligan v. Milligan*, 624 A.2d 474, 477 (Me. 1993); *see also Furrow*, 2014 ME 149, ¶ 9, 107 A.3d 604.

Here, the fact finder is again presented with competing version of the truth regarding what intent the Association had toward 33A. There is an ambiguity in the Association's 1940 deed to Byron Haskell and whether 33A was included in that conveyance; namely because 33A is not listed in the 1940 deed. The standard rules of construction might suggest that the express mention

of certain parcels, to the exclusion of 33A, indicates an intent for the Association to withhold title to 33A. Moreover, the Defendants argue elsewhere that 33A is not a "lot" as that term was used by the Association. This becomes an issue here because the 1940 deed manifests an intent to convey unsold "lots." If 33A is not a lot, as Defendants originally argue, then the deed's reference to "lots" could also be interpreted to mean that the conveyance did not include the 33A parcel.

Conversely, the deed still manifests an intent to convey *all* unsold lots held by the Association. Without regard to any rule of construction, this language could also suggest that the Association intended to convey all unsold property to Byron Haskell. Importantly, there is no evidence to suggest that the Association ever conveyed a fee interest in 33A or the other "A" parcels to any other party. A reasonable fact finder could interpret the 1940 deed to mean that the Association intended to convey title to 33A, regardless of whether 33A was left unmentioned by mistake, mischaracterization, or otherwise. Accordingly, the court cannot say that, as a matter of law, the Association intended to convey a fee interest in 33A to Byron Haskell by virtue of the 1941 deed. A fact finder is again presented with competing versions of the truth regarding the 1940 Byron Haskell deed and the court cannot say that either interpretation is unreasonable. Accordingly, there is a genuine issue of material fact on the Defendants' title by deed theory of ownership and summary judgment is inappropriate on such grounds.

The court is also unpersuaded by the Plaintiffs and Intervenors argument regarding *Brown v. Heard*, 85 Me. 294, 27 A.182 (1893). In *Brown*, the Law Court held that a meaning and intending to convey clause in a deed could not expand the premises otherwise described by meets and bounds. The facts presented here do not concern the size or location of 33A and there is no specific meets and bounds description at issue. Instead, there is a genuine issue of fact regarding whether the Association's deed to Byron Haskell intended to convey 33A because the deed did not

identify the parcel's number. The court cannot say that, as a matter of law, the Association's deed intended to include or exclude 33A from its deeded conveyance to Byron Haskell.

## 2. Title as Shareholder

The Plaintiffs and Intervenors next argue that the Defendants could not obtain an interest in 33A by virtue of any shareholder interest. The Law Court has recognized the equitable principle that "shareholders have the right to a fair share of assets in a dissolved corporation." *Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 15, 732 A.2d 264. However, "[merely ceasing to transact business does not work a dissolution." *Tozier v. Woodworth*, 135 Me. 46, 49, 188 A. 771 (1936).

Here, the court is without facts or evidence sufficient to state as a matter of law how, if, or when, the shareholders in the Association dissolved the corporation. Moreover, there is nothing in the record that would allow this court to determine what rights the Defendants might have by virtue of Byron Haskell's original shares in the Association because there are others who also held Association shares (i.e. heirs to Woodbury and Winship). Accordingly, the court cannot say as a matter of law that the Defendants have acquired fee title to 33A by virtue of Byron Haskell's shares in the Association, nor can it properly determine the scope of any potential interest that may arise in 33A out of those shares. Therefore, there is a genuine issue of material fact regarding the Defendants' title by shareholder theory and judgment is inappropriate on such grounds.

## 3. Paper Streets Act

Finally, the Plaintiffs and Intervenors argue that the Defendants could not obtain fee title to 33A because title has already passed to the owners of lots 33 and 34 by virtue of the Paper Streets Act. The Paper Streets Act has several components. However, the following passage is particularly relevant here:

> "Any conveyance made before September 29, 1987 that conveyed
> land abutting upon a proposed, unaccepted way laid out on a

subdivision plan recorded in the registry of deeds is deemed to have conveyed all of the grantor's interest in the portion of the way that abuts the land conveyed, unless the grantor expressly reserved the grantor's title to the way by a specific reference to this reservation in the conveyance of the land."

33 M.R.S. § 469-A. "The term 'proposed, unaccepted way' is not defined under Maine Statutory law." *Fournier v. Elliott*, 2009 ME 25, ¶ 14, 966 A.2d 410. The Law Court has also not articulated a specific definition, stating instead that "the statutory scheme . . . encompasses both constructed and unconstructed roads" and "is not conditioned on its physical state." *Fournier*, 2009 ME 25, ¶ 16, 966 A.2d 410. The only condition for a way is that it be "one that is laid out on a subdivision plan recorded in the registry of deeds." *Fournier*, 2009 ME 25, ¶ 16, 966 A.2d 410.

Here, the fact finder is again forced to determine the Association's intent regarding 33A and it is therefore unclear whether the Paper Streets Act divests ownership of 33A under the circumstances. If the Defendants have acquired a fee interest in 33A subject to a few select easements, the Defendants acquisition could indeed be unaffected by the Paper Streets Act because the association may not have intended for 33A to be a way. Conversely, if subdivision residents all have an easement right to 33A, then it might indeed be considered a "way" for the purposes of the Act. Accordingly, because a fact finder is still presented with competing versions of the Association's intent, and such intent is material to determining the potential application of the Paper Streets Act, the court lacks sufficient evidence to determine as a matter of law whether the Paper Streets Act precludes fee ownership of 33A by the Defendants.

### D. Standing

Judgment regarding whether the Plaintiffs have standing in this case has already been determined by this court and the doctrine of the law of the case controls the issue here. (Order, J.

---

Certainly, if 33A is a "way," then it would appear as if title to the parcel passed to the abutting landowners pursuant to 33 M.R.S. 469-A. *See also* 23 M.R.S. §§ 3031(2), 3032.

Horton, May 29, 2019.) The doctrine of the law of the case generally holds that a judge should not overrule or reconsider the decision of another in the same case or reopen what has already been decided. *See Blance v. Alley*, 404 A.2d 587, 589 (Me. 1979). Justice Horton squarely decided, on a Motion for Summary Judgment, that the Plaintiffs have standing to pursue their claims and this court does not see any reason to disturb this prior decision. Additionally, the Intervenors' interest in this case is similar to that of the Plaintiffs and virtually indistinct for the purposes of standing. Accordingly, the Intervenors also have standing to bring this claim.

The court is also unpersuaded by the Defendants' argument regarding final judgments. Of course, the doctrine of the law of the case does not apply if it would prevent the court from hearing additional evidence essential to adjudicate issues. *See Pearson v. Wendell*, 2015 ME 136, ¶¶ 26-28, 125 A.3d 1149. However, there is no new evidence presented by the Defendants to support their lack of standing argument and the court sees no reason to disturb Justice Horton's prior ruling on the issue.

### E. Indispensable Party

The Defendants also argue that summary judgment cannot be entered because other potential fee owners of 33A have not been joined in this lawsuit. Maine Rule of Civil Procedure 19(a) "requires joinder of all available persons who have an interest in the litigation so that any judgment will effectively and completely adjudicate the dispute." *Ocwen Fed. Bank v. Gile*, 2001 ME 120, ¶ 14, 777 A.2d 275 (quotations omitted). "If joinder of a directly interested party is possible, then joinder is mandatory." *Gile*, 2001 ME 120, ¶ 14, 777 A.2d 275. The Law Court has interpreted Rule 19(a) to "require the joinder of a party holding a property interest that will be affected by the litigation." *Gauthier v. Gerrish*, 2015 ME 60, ¶ 11, 116 A.3d 461.

Here, the Plaintiffs conveyed their ownership of lot 33 to Stuart and Mitzi Perlmutter during the pendency of this lawsuit. However, the Perlmutter's have not been joined as parties to this lawsuit. The court notes at the outset that both Motions for Summary Judgment are denied because there are genuine issues of material fact regarding each cause of action at issue. However, the court also notes that the Perlmutter's may have a potential fee interest in 33A at the center line by virtue of the Paper Streets Act. Because the Defendants seek a declaratory judgment that they own fee title to 33A, the Perlmutter's must be joined in the Defendants' lawsuit before this count may proceed. The Perlmutter's potential fee interest will necessarily be *affected* by the Defendants' request for declaratory judgment. Although denial of judgment may not prejudice the Perlmutter's potential fee interest, the court cannot divest of the Perlmutter's of the opportunity to claim ownership of part of the parcel in this action. There is no evidence indicating that the Perlmutter's cannot be joined in this lawsuit and thus their potential fee interest in the parcel cannot be ignored. Accordingly, the Defendants' requests for declaratory judgment that they own a fee interest in 33A cannot proceed to trial unless the Defendants have joined the Perlmutters. This ruling will not affect the Scheduling Order absent a motion from a party. Furthermore, the court may allow the remaining portions of the case to go to trial in the event this issue is not resolved. This ruling encompasses Counts Two, Three and Four found in Defendants' Supplemental Counterclaim.

**V. Conclusion**

Although the parties do not contest most facts, summary judgment is not appropriate under the circumstances. The parties may prefer to present the court with a stipulated record for decision, but a record of generally stipulated facts does not, by itself, mean that there are no genuine issues of material fact. *See Blue Sky West, LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 16, n.10, 215

A.3d 812. Here, there are genuine issues of material fact regarding the Associations original intent when drafting the Plan and conveying express easements over 33A. The intent of the Association is essential to resolving each claim presented and thus summary judgment is not the appropriate mechanism in which to dispose of this case.

The entry is:

Plaintiffs' Motion for Summary Judgment is DENIED.

Intervenors' Motion for Summary Judgment is DENIED.

Defendants' Motion for Summary Judgment is DENIED.

Defendants are ORDERED to join Stuart M. and Mitzi P. Perlmutter as parties to Counts Two, Three, and Four of their Supplemental Counterclaim.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: Apr 23, 2014

Thomas McKeon
Justice, Superior Court